# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **DECONDRA MOORE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-00825 |
| ) | Judge Aleta A. Trauger |
| **PRIME NOW, LLC,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Before the court is plaintiff Decondra Moore's Motion to Remand and for Costs and Attorney's Fees, arguing that the defendant's removal of this action from state to federal court was effected well outside the statutory thirty-day removal period and that, because the removal was objectively unreasonable, she is entitled to attorney's fees. (Doc. No. 6 (Motion), Doc. No. 7 (Memorandum).) The defendant has filed a Response in Opposition (Doc. No. 9), to which the plaintiff has filed a Reply (Doc. No. 10).

For the reasons set forth herein, the Motion to Remand (Doc. No. 6) will be granted, and the request for costs and attorney's fees will be provisionally granted, pending the filing of a properly supported motion in accordance with Local Rule 54.01.

## I.    PROCEDURAL HISTORY

The plaintiff filed this lawsuit in the Circuit Court for the Twentieth Judicial District of Tennessee on October 13, 2021. (*See* Doc. No. 1-1.) The Complaint alleges that the plaintiff is a citizen and resident of Nashville, Davidson County, Tennessee and that the defendant Prime Now, LLC (to which the parties refer as "Amazon") is a limited liability company whose principal place of business is in Seattle, Washington. (*Id.* ¶¶ 1, 2.) The plaintiff alleges that she was wrongfully

fired by Amazon because of having made a claim for workers' compensation, in violation of the Tennessee Workers' Compensation Act, Tenn. Code Ann. § 50-6-101, or for otherwise exercising her rights under the Act. (*Id.* ¶¶ 12–13, 15.) The Complaint demands relief in the form of the plaintiff's reinstatement to her former position or, alternatively, front pay in an amount "not to exceed" $100,000, as well as backpay from the date of her termination until trial at a rate "not to exceed" $597 per week,[1] compensatory damages for mental and emotional distress in an amount "not to exceed" $100,000, and punitive damages "not to exceed" $500,000. (*Id.* ¶¶ 18, 19 and p. 4.) The return of service reflects that the defendant was served through its registered agent for service of process on October 14, 2021. (Doc. No. 7-1, at 2.)

The defendant did not retain counsel to represent it in this case until November 19, 2021 (*see* Doc. No. 7-4, at 2), after counsel for the plaintiff reached out to a local law firm that had represented the defendant in the past, to inquire about whether the defendant was going to respond to the lawsuit (*see* Doc. No. 7-2, at 2). On December 2, 2021, the defendant filed an Unopposed Motion for Extension of Time to File Responsive Pleading in the state court proceeding, conceding that it was served with process on October 14, 2021. (Doc. No. 7-4, at 2.) The Answer, filed on December 20, 2021, did not raise any defense based on service of process. (Doc. No. 7-5.)

On September 6, 2022, after reviewing the defendant's answers to discovery, counsel for the plaintiff emailed counsel for the defendant, rejecting a $5,000 settlement offer, withdrawing any prior settlement demands the plaintiff had made, and indicating that he would proceed with noticing the deposition of the defendant's corporate representative. (Doc. No. 7-7.) Two weeks following that exchange, counsel for the plaintiff sent counsel for the defendant a draft notice of

---

[1] By the time the plaintiff filed suit, nearly one year had passed since the date of the plaintiff's termination, meaning that her demand for backpay already amounted to a claim for damages of more than $30,000.

deposition for the defendant's corporate representative, along with a timeline of events showing, according to the plaintiff, how the defendant had bungled the plaintiff's workers' compensation claim and extending an offer to settle for $75,000 that would expire upon the commencement of depositions. (Doc. No. 1-3, at 1; Doc. No. 7-8.)

On October 13, 2022, approximately three weeks after that email, exactly one year after the Complaint was filed, and nearly a year after service of process,[2] the defendant filed its Notice of Removal. (Doc. No. 1.) The Notice states that the original Complaint "did not allege a specific amount in controversy" or "provide specific facts relating to the claims for damages that would have allowed for the Defendant to calculate or determine that the amount in controversy was over $75,000." (Doc. No. 1 ¶ 6.) The Notice of Removal asserts that the defendant was unable to ascertain that the case was removable on the basis of diversity of citizenship until it received the $75,000 settlement offer from the plaintiff on September 19, 2022 and that it removed the case within thirty days after receipt of that offer. (*Id.* ¶ 7.) The plaintiff responded with her Motion to Remand, asserting that the removal was untimely, as the defendant knew or should have known as soon as it was served that the lawsuit was removable, based on the damages demand set forth in the Complaint.

## II.     LEGAL STANDARD

"Generally, a civil case brought in a state court may be removed by a defendant to federal court if it could have been brought there originally." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000); 28 U.S.C. § 1441(a). A federal district court has original "diversity"

---

[2] For reasons unclear, the Notice of Removal represents that the defendant was served with process on October 21, 2021 (Doc. No. 1, at 1), which conflicts with the concession in its state court Motion for Extension of Time that it was served on October 14, 2021 (Doc. No. 7-4, at 2). This discrepancy is not material.

jurisdiction where the suit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. 1332(a). A defendant removing a case has the burden of proving the diversity jurisdiction requirements by a preponderance of the evidence. *Rogers*, 230 F.3d at 871 (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)). The removal statutes are to be "strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006).

A defendant removing an action to federal court must file a notice of removal. 28 U.S.C. § 1446(a). The defendant generally must file the notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* § 1446(b)(1). However, "[t]he 30-day period in § 1446(b)(1) starts to run only if the initial pleading contains solid and unambiguous information that the case is removable." *Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 364 (6th Cir. 2015) (internal quotation marks and citation omitted). If the initial pleading lacks such "solid and unambiguous information that the case is removable," the defendant must file the notice of removal "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper" that contains "solid and unambiguous information" that the case is removable. *Id.*; *see also* 28 U.S.C. § 1446(b)(3).

It has long been established that, for cases filed in federal court, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938); *see also Jaiyeola v. Brundage*, No. 22-1083, 2022 WL 18781019, at *2–3 (6th Cir. Nov. 14, 2022) (citing *St. Paul Mercury*); *Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005) (same); *Wood v. Stark Tri-Cty. Bldg. Trades Council*,

473 F.2d 272, 273 (6th Cir. 1973) (same). Under this rule, "[t]he inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim." *St. Paul Mercury*, 303 U.S. at 289 (footnoted citations omitted). In this context, "most courts have found a legal certainty that more than the jurisdictional amount could not be recovered only where the applicable state law barred the *type of damages* sought by the plaintiff." *Kovacs*, 406 F.3d at 396 (quoting *Wood*, 473 F.2d at 274) (emphasis added in *Kovacs*). On the other hand, where "state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement." *Id.* at 397.

Notably, the Supreme Court recognized in *St. Paul Mercury* that, for cases filed in state court and removed to federal court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end." *St. Paul Mercury*, 303 U.S. at 290. In that context, absent unusual circumstances, "the status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove." *Id.* (footnoted citations omitted).

### III.   ANALYSIS

The plaintiff does not dispute that a written settlement offer may constitute an "other paper" establishing that a case "is or has become removable" for purposes of § 1446(b)(3). Instead, she contends that § 1446(b)(3) simply does not apply, because the Complaint was immediately removable under § 1446(b)(1) on the basis of diversity jurisdiction, as it shows complete diversity of citizenship between the parties (which is not contested) and expressly seeks damages for backpay of at least $30,000 (as of the date of filing the Complaint), compensatory damages for

emotional distress in an amount up to $100,000, front pay in lieu of reinstatement in an amount up to $100,000, and punitive damages up to $500,000. The defendant, however, did not remove the case within thirty days of service of the Complaint. In fact, it failed even to retain counsel to enter an appearance until after the expiration of the thirty-day window provided by § 1446(b)(1). The plaintiff maintains that the removal was untimely. She also asserts that she should be awarded attorney's fees in connection with her Motion to Remand.

In response, the defendant argues that removal was timely, because (1) the settlement offer for $75,000, received within thirty days prior to removal, was the first "solid and unambiguous" information it received establishing the requisite amount in controversy (Doc. No. 9, at 6); (2) the "arbitrary and unsupported *ad damnum* clauses vaguely referring to the maximum amount of damages, without any factual support," did not provide the type of "solid and unambiguous" information required to satisfy the amount in controversy (*id.* at 6–7); (3) the plaintiff's common law workers' compensation retaliation claim is exclusively governed by, and preempted by, the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304(g), and the TPPA does not permit the recovery of punitive damages;[3] (4) even if punitive damages were available, the plaintiff has not plausibly pleaded a basis for recovering punitive damages; (5) the "ambiguous figures indicating limits on the upper amounts of damages that could possibly be recovered . . . were not supported by any information, explanation, or facts . . . to explain the basis of or how these limits were calculated" (Doc. No. 9 at 3); and (6) all of the plaintiff's claimed damages are speculative, particularly in light of the fact that she should have brought her claims under the

---

[3] The defendant asserts in a footnote that the plaintiff failed to assert claims under the TPPA and that any such claims are now time-barred. It expresses an intention to file a motion to dismiss on this basis. As set forth below, any such motion would be frivolous.

TPPA, the statute of limitations for which has now run. The defendant also denies that the plaintiff should recover any attorney's fees in connection with this motion.

### A. The Complaint Pleads the Requisite Amount in Controversy

The defendant does not argue that the damages demands in the Complaint are not asserted in good faith. And, although the damages figures are expressed as maximums, the amounts demanded clearly add up to more than $75,000, as set forth above (backpay, plus restitution or front pay up to $100,000, compensatory damages for mental suffering up to $100,000, and punitive damages up to $500,000). Facially, these figures are sufficient to establish the requisite amount in controversy.

In an attempt to avoid that conclusion, the defendant cites several cases that were dismissed for lack of jurisdiction or remanded to state court for lack of jurisdiction, despite asserting damages in excess of the jurisdictional amount. These cases, however, all involve situations in which the plaintiff's claims were legally unfounded or frivolous. *See, e.g.*, *Scott v. Veillon*, No. 14-CV-2752, 2015 WL 1978107, at *2 (W.D. La. May 1, 2015) (dismissing case *sua sponte* for lack of subject matter jurisdiction where the plaintiff's claims for $1,000,000 in damages for libel and unlimited punitive damages were, on the basis of the claims alleged, clearly frivolous and unsupportable); *Cook v. Cooper*, No. 1:09-cv-101, 2011 WL 345805, at *5 (E.D. Tenn. Jan. 31, 2011) (holding that the plaintiff did not meet the jurisdictional amount required by § 1332(a) merely by making a bare demand in his complaint for over $450,000 in damages, where the claims were frivolous and it was legally certain that he would not be entitled to damages at all (citing *Erdman v. Robinson*, 115 F. App'x 778, 779 (6th Cir. 2004)); *Muwwakil-Davis v. Wilmington Fin., Inc.*, No. CIV.A 3:10CV563, 2011 WL 63868, at *1 (E.D. Va. Jan. 7, 2011) (remanding case to state court for failure to establish the amount in controversy requirement, where the plaintiff's claims for compensatory damages "not to exceed $400,000" and punitive damages "in an amount up to and

including $350,000" were not plausible, as the actual damages alleged in the complaint amounted to $7,872).

The Complaint in this case, however, asserts a substantive claim for relief and associated damages demands that are neither implausible nor frivolous. In this type of situation, courts typically find the amount in controversy requirement satisfied, even where the actual amount of damages is not specified. Thus, for example, in *Wood v. Stark Tri-County Building Trades Council*, which was decided when the amount in controversy required for diversity jurisdiction was $10,000, the plaintiff originally brought claims against the defendant for the malicious destruction of his personal property, claiming compensatory damages of $1.5 million and punitive damages of $1.5 million. The defendant moved for summary judgment on the grounds of lack of subject matter jurisdiction after the plaintiff admitted during discovery that the actual value of his destroyed property was $3,000. *Wood*, 473 F.2d at 272–73. However, because Ohio law permitted punitive damages for willful and malicious torts and did not require a "mathematical relationship" between actual and punitive damages, the Sixth Circuit held that it was possible that the plaintiff could recover more than $7,000 in punitive damages and, therefore, that the amount in controversy requirement was satisfied. *Id.* at 274.473 F.2d 272, 273 (6th Cir. 1973); *accord Turntine v. Peterson*, 959 F.3d 873, 881 (8th Cir. 2020) ("The relevant jurisdictional fact the removing party must prove here is whether a fact finder might legally conclude that the damages are greater than the requisite amount." (internal quotation marks and citations omitted).

Applying this principal to this case, as of the date she filed suit, the plaintiff had already accrued backpay damages of approximately $30,000 (not counting possible mitigation). Even assuming that she was entitled to only nominal compensatory damages, it is not beyond the realm of possibility that she could recover more than $45,000 in punitive damages, bringing the amount

in controversy to more than $75,000. It is therefore clear that the requisite amount in controversy is met in this case—unless the types of damages the plaintiff seeks are not actually available in this case. The court turns now to that question.

      B.      **The Availability of Punitive Damages**

Recognizing that, as a general rule, a plaintiff's ability to recover punitive damages is part of the "jurisdictional analysis . . . unless it is apparent to a legal certainty that such cannot be recovered," *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 408 (6th Cir. 2007) (citation omitted), the defendant contends that the plaintiff is not legally entitled to recover punitive damages in this case.

This argument is largely premised upon the defendant's flatly incorrect and utterly unsupported assertion that the plaintiff's claim falls under the TPPA. A claim under the TPPA, Tennessee's "Whistleblower Act," requires a showing that a defendant employer discharged the plaintiff either for refusing to remain silent about illegal activities or for refusing to participate in illegal activities. *Williams v. City of Burns*, 465 S.W.3d 96, 110 (Tenn. 2015). The TPPA, as amended in 2014, is "the exclusive basis for relief" in such cases. *Id.* at 110 n.11. As the Tennessee Supreme Court has explicitly recognized, however, "[t]his amendment did not . . . affect claims for other types of retaliatory discharge." *Id.*

Workers' compensation retaliation is squarely among the other types of retaliatory discharge recognized by Tennessee common law that were *not* affected by the 2014 amendments. *See Haynes v. Formac Stables, Inc.*, 463 S.W.3d 34, 36 (Tenn. 2015) (recognizing that a claim for workers' compensation retaliation, as established by *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984), is distinct from at TPPA claim); *Yardley v. Hosp. Housekeeping Sys., LLC*, 470 S.W.3d 800 (Tenn. 2015) (reiterating the elements of a workers' compensation retaliation claim and not suggesting that such claims are preempted by the TPPA). This court, even before the TPPA

amendments, expressly recognized that a workers' compensation retaliation claim is separate and distinct from a whistleblower claim under the TPPA. *See Crook v. Simpson Strong-Tie Co.*, No. 2:10-cv-00099, 2012 WL 123988, at *9 (M.D. Tenn. Jan. 17, 2012) (Trauger, J.) (where the plaintiffs brought claims based on having been terminated for having made workers' compensation claims, the court dismissed a TPPA claim on the basis that the TPPA was "simply not applicable to this case"). Aside from the Tennessee Supreme Court's express recognition of such claims in *Yardley*, following the 2014 TPPA amendments, the Tennessee courts have continued to entertain workers' compensation retaliation claims without suggesting preemption by the TPPA.[4] The defendants have not pointed to any Tennessee case, or any federal case applying Tennessee law, holding that workers' compensation retaliation claims are preempted by the TPPA. The court finds it incontrovertible that they are not.

The defendant also asserts that the plaintiff has not plausibly pleaded a claim for punitive damages, because she has not alleged facts showing that the defendant engaged in "fraud, malice, gross negligence, oppression, [or] willful misconduct." (Doc. No. 9, at 12.) In fact, as the defendant likely knows, punitive damages are available in Tennessee when a plaintiff establishes with clear and convincing evidence that the defendant "acted maliciously, *intentionally*, fraudulently or recklessly." Tenn. Code Ann. § 29-39-104(a)(1) (emphasis added); *see also Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) ("[A] court may henceforth award punitive damages only if it finds a defendant has acted either (1) *intentionally*, (2) fraudulently, (3) maliciously, or (4) recklessly." (emphasis added)). The Complaint in this case alleges that the defendant acted

---

[4] *See, e.g.*, *Foltz v. Barnhart Crane & Rigging Co.*, No. W2018-02198-COA-R3-CV, 2019 WL 6842375 (Tenn. Ct. App. Dec. 16, 2019); *Hilliard v. Dolgencorp*, LLC, No. E2018-00312-COA-R3-CV, 2019 WL 1377263 (Tenn. Ct. App. Mar. 26, 2019); *Deberry v. Cumberland Elec. Membership Corp.*, No. M2017-02399-COA-R3-CV, 2018 WL 4961527, at *1 (Tenn. Ct. App. Oct. 15, 2018).

intentionally. (Doc. No. 1-1 ¶ 14.) It also alleges facts that support that assertion. (*Id.* ¶¶ 5–11.) This argument fails as well.

Insofar as the defendant might be attempting to argue that punitive damages are not available in workers' compensation retaliation claims, Tennessee has long recognized that punitive damages are available in this context. *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984). In sum, because it is not "apparent to a legal certainty" that the plaintiff cannot recover punitive damages, *Smith*, 505 F.3d at 408, it is appropriate to include them in the jurisdictional analysis.

### C. Other Damages Available for Workers' Compensation Retaliation Claims

It is clear under Tennessee law that all of the types of damages the plaintiff seeks here—backpay, reinstatement or front pay, compensatory damages, and punitive damages—may be recovered by a prevailing plaintiff on a workers' compensation retaliation claim. *See, e.g.*, *Torres v. Precision Indus., Inc.*, 995 F.3d 485, 490 (6th Cir. 2021) ("Successful plaintiffs may obtain a variety of remedies, including reinstatement, backpay, damages for emotional distress, and punitive damages." (citations omitted)). In *Torres*, the Sixth Circuit affirmed judgment for the plaintiff on his workers' compensation retaliation claim and affirmed damages in the amount of $41,548.42 in backpay, $1,000 in compensatory damages for emotional distress, and $50,000 in punitive damages. *Id.* at 494, 495.[5]

With respect to the defendant's assertion that the plaintiff did not adequately plead facts to support the amount of compensatory and punitive damages she seeks, nothing in the Tennessee or

---

[5] Notably, the Complaint in that case, filed in the United States District Court for the Western District of Tennessee, demanded damages in all of these categories but without claiming a specific dollar figure with respect to any of them, instead simply asserting that the amount in controversy "exceeds the sum of $75,000." *Torres v. Precision Indus., Inc.*, No. 1:16-cv-01319-STA-jay (W.D. Tenn. Dec. 19, 2016) (Compl., Doc. No. 1 ¶ 5). The defendant did not move to dismiss for lack of subject matter jurisdiction, nor did the district court raise the matter *sua sponte*.

federal pleading rules requires that such damages be pleaded with specificity or that they somehow be itemized. As the district court in *Torres* recognized, compensatory and punitive damages, by their nature "are *necessarily vague* and are generally considered a fact issue for the jury." *Torres v. Precision Indus., Inc.*, 437 F. Supp. 3d 623, 645–47 (W.D. Tenn. 2020), *aff'd as modified*, 995 F.3d 485 (6th Cir. 2021).

The defendant, in short, cannot show to a legal certainty that the plaintiff is not entitled to the types of damages she seeks, and it has not made any showing that the amounts sought in the Complaint were not alleged in good faith. *See Wood*, 473 F.2d at 274 ("[M]ost courts have found a legal certainty that more than the jurisdictional amount could not be recovered only where the applicable state law barred the type of damages sought by the plaintiff."). Accordingly, because "the initial pleading contains solid and unambiguous information that the case is removable," *Berera*, 779 F.3d at 364, the thirty-day period in § 1446(b)(1) began to run upon service of the Complaint on Amazon on October 14, 2021. That period expired thirty days later. The present motion, filed on October 13, 2022, is untimely, and the Motion to Remand will be granted.

D. **The Request for Attorney's Fees**

The removal statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Paul v. Kaiser Found. Health Plan*, 701 F.3d 514, 523 (6th Cir. 2012) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). Fees should be denied if "an objectively reasonable basis for removal" exists. *Id.*

The court finds that the removal in this case was objectively unreasonable. On its face, the Complaint asserted diversity of citizenship and the requisite amount in controversy for the court

to exercise diversity jurisdiction. The defendant's decision to wait until it received a settlement demand (for less than the jurisdictional amount) to file its Notice of Removal was based on the unsupported contention that the amount in controversy was not established by the Complaint, compounded by purported reliance on the completely unsupported fiction that the plaintiff's claim is governed by the TPPA. The plaintiff is entitled to reasonable attorney's fees incurred in seeking remand.

Because the plaintiff has not submitted documentation to support an award of a specific amount of fees, the plaintiff shall file a motion for fees in accordance with Local Rule 54.01, unless the parties are able to agree on an appropriate amount.

## IV. CONCLUSION

For the reasons set forth herein, the plaintiff's motion (Doc. No. 6) will be granted. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge